UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RICARDO JENKINS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-0218 (EGS) |
| DISTRICT OF COLUMBIA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant District of Columbia's Motion to Dismiss [ECF No. 5] and the Federal Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [ECF No. 13]. For the reasons discussed below, the motions are granted.

I. BACKGROUND

Plaintiff's claims arose from an incident on November 13, 2014 at the Re-Entry Sanctions Center ("RSC") operated by the Court Services and Offender Supervision Agency ("CSOSA"). Compl. at 2 (page number designated by the Court); Fed. Defs.' Mem. of P & A. in Support of Fed. Defs.' Mot. to Dismiss, or in Alternative, for Summ. J. ("Fed. Defs.' Mem."), Leonard Decl. ¶¶ 1-2. Plaintiff and the other resident involved in the incident had been referred to the RSC "due to substance abuse issues." Leonard Decl. ¶ 8. They "were roommates while housed at the RSC." *Id*. Roger Leonard and Benjamin Treadwell were substance abuse counselors at the RSC. Def.'s Mem., Treadwell Decl. ¶ 1; Leonard Decl. ¶ 1. Neither Mr.

Leonard nor Mr. Treadwell were aware of any animosity between, or any prior incident involving, plaintiff and the other resident. Leonard Decl. ¶ 8; Treadwell Decl. ¶ 3.

According to plaintiff, while he was speaking with Mr. Leonard in the hand scan room, the other resident entered the room, sat on Mr. Leonard's desk, and refused to leave when "Mr. Leonard told [him] that he was not finish[ed] talking to [plaintiff]." Compl. ¶ 2. At that time, the other resident allegedly called plaintiff "derogatory names," and "started striking [plaintiff] viciously." *Id*.; *see* Jenkins Decl., ECF No. 15 ¶¶ 2-3. Plaintiff claimed that "[t]here was no intervention by anyone until [the other resident] stop[ped] his attack . . . and left the room on his [own]." Compl. at 2.

Mr. Leonard described the incident as follows:

> 2. While serving in the capacity of Substance Abuse Counselor, I was involved in an altercation that took place on November I 3, 2014 at the RSC. On that date, I was in the hand scan room at the RSC speaking with [plaintiff] about an incident that occurred the day before. I was sitting on a chair that was facing the computer in that room while [plaintiff] was sitting in a chair that was facing the opposite direction toward the doorway to the 6th floor hallway.
>
> 3. While speaking with [plaintiff], another RSC resident appeared in the doorway to the hand scan room. I asked the resident to leave and return when I was finished speaking with [plaintiff]. The other resident then left, and returned approximately five to ten minutes later.
>
> 4. When [plaintiff] saw the resident standing in the doorway he made an obscene comment about the resident's mother; specifically that [plaintiff] called the other resident's mother a "bitch." Apparently a few days earlier both [plaintiff] and the resident were in a group meeting at the RSC during which the other resident shared that his mother had passed away while he was holding her.

2

> 5. After [plaintiff] made the comments, he got up from the chair and walked toward the resident. Because of where I was standing I could not tell whether the other resident walked toward [plaintiff] first, or whether [plaintiff] walked toward him first. At that point I turned my chair to face [plaintiff] and the resident, both of whom were already in the middle of the hand scan room attempting to punch each other. From my vantage point, I could not discern who attempted first contact.
>
> 6. I immediately called for assistance from Substance Abuse Counselor, Benjamin Treadwell, who entered the room and stood between the two men, at which time both men stopped fighting. Security personnel then entered the room and kept both men away from each other. To my best recollection, the entire altercation between the two residents lasted approximately thirty (30) seconds to one (1) minute. I was not aware of any animosity or any prior incident between [plaintiff] and the other resident.
>
> 7. At some point, [plaintiff] had a bruise on his face. I do not have any recollection or information as to when the injury occurred. Because of his injury, security personnel escorted [plaintiff] to the RSC's medical unit. [Plaintiff] was later seen at Providence Hospital where he was diagnosed with having a contusion and was prescribed ibuprofen for pain.

Leonard Decl. ¶¶ 2-7.

When Mr. Treadwell entered the room, he "observed an incident . . . wherein the two men were trying to grab each other." Treadwell Decl. ¶ 2. He believed the "altercation . . . to be more of a verbal exchange than a physical exchange," although plaintiff did "have a bruise on his face[.]" *Id*.

Plaintiff asserts that defendants' employees "did not use their Fundermental [sic] discretion in good Judgment to prevent an attack on [plaintiff], and as a result plaintiff "was severely Injuried [sic]." Compl. at 1. He deems defendants' actions negligent and in violation of his Eighth Amendment rights. *Id*. As compensation for his injuries, plaintiff demands $5 million. *Id*. at 2.

3

## II. DISCUSSION

### A. *District of Columbia's Motion to Dismiss*

The District of Columbia moves to dismiss plaintiff's complaint in its entirety on the ground that the claims are barred. *See* Mem. of P. & A. in Support of the District of Columbia's Mot. to Dismiss ("District Mem.") at 3. "[T]he Court has previously dismissed [a] Complaint regarding the same incident on the merits," the District argues, such that "the current Complaint is barred by the doctrine of *res judicata*." *Id.*

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation marks omitted). "Under claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in [a prior] action." *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002)) (internal quotation marks and additional citation omitted); *see New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."). Parties are thus prevented from relitigating in a separate proceeding "any ground for relief which they already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity," and regardless of the soundness of the earlier judgment. *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg.Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously").

4

On March 17, 2015, in the Superior Court of the District of Columbia, plaintiff sued the District of Columbia government, among others, and demanded damages of $ 5 million for injuries allegedly sustained in the altercation on November 13, 2014 at the RSC. *See* Complaint, *Jenkins v. District of Columbia*, Civ. No. 15-523 (D.D.C. Apr. 9, 2015). After the federal defendants removed the action to this Court, the District of Columbia moved to dismiss the complaint and represented that plaintiff consented to its motion. *See* Def. District of Columbia's Consent Mot. to Dismiss, *Jenkins v. District of Columbia*, Civ. No. 15-523 (D.D.C. May 6, 2015). The Court granted the motion and that of the federal defendants, dismissed the complaint, and closed the case. *See* Dismissal Order, *Jenkins v. District of Columbia*, Civ. No. 15-523 (D.D.C. May 28, 2015).

Federal Rule of Civil Procedure 41(b) provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). Relying on Rule 41(b), the District posits that the dismissal of plaintiff's prior complaint was involuntary, and because the dismissal order did not state otherwise, it operates as an adjudication on the merits. District Mem. at 3. Thus, the District argues, plaintiff's claims arising from the November 13, 2014 incident are barred under the doctrine of res judicata. *Id*. at 3-4.

Plaintiff appears to have consented to the dismissal of his claims against the District of Columbia in the prior action. In light of his status as a *pro se* litigant, his consent cannot be construed reasonably as an involuntary dismissal with preclusive effect. The Court declines to

5

dismiss under the doctrine of *res judicata*. However, the instant complaint is subject to dismissal for a different reason: it fails to state a claim upon which relief can be granted.

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Although "'detailed factual allegations'" are not required, a plaintiff must offer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 555-57). "The court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor . . . , but is not required to accept the plaintiff's legal conclusions as correct[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014) (quoting *Doe v. Rumsfeld*, 683 F.3d 390, 391 (D.C. Cir. 2012)).

Plaintiff's complaint states that the November 13, 2014 incident took place at a CSOSA facility. It does not allege any involvement of the District of Columbia government or a District of Columbia government employee. Rather, the complaint expressly states that plaintiff is "suing the Federal Government" because of the action, or inaction, of federal employees. Compl. at 1. The Court concludes that the complaint fails to state a plausible claim against the District of Columbia, and dismissal of plaintiff's claims against the District is warranted.

### B. *Federal Defendants' Motion to Dismiss or for Summary Judgment*

The Court presumes that plaintiff brings this action against CSOSA under the Federal Tort Claims Act ("FCTA"). *See* 28 U.S.C. §§ 2671-80. "The FTCA waives sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 508 (D.C. Cir. 2009) (quoting 28 U.S.C. § 1346(b)(1)). Under District of Columbia law, a "plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (internal quotation marks and citations omitted).

CSOSA likens plaintiff's situation to that of an incarcerated prisoner. *See* Fed. Def.'s Mem. at 7-9. "In the District of Columbia . . . penal authorities are under a duty to protect and safeguard the prisoners entrusted to their custody." *Haith v. District of Columbia*, 526 A.2d 17, 18 (D.C. 1987) (citations omitted). It is plaintiff who bears the burden to show that CSOSA "breached its duty to protect him from harm and that his injuries were a proximate result of that breach." *District of Columbia v. Carmichael*, 577 A.2d 312, 314 (D.C. 1990) (citing *Haith*, 526 A.2d at 18); *see also District of Columbia v. Moreno*, 647 A.2d 396, 398 (D.C. 1994). Plaintiff nowhere articulates the standard of care CSOSA was to have met, however. Nor does plaintiff counter CSOSA's assertions of fact, *see* Fed. Def.'s Statement of Material Facts as to Which There Is No Genuine Dispute ¶¶ 8, 11, supporting the argument that it "did not breach its duty toward [p]laintiff insofar as that duty extended to having knowledge of any previous animosity between [p]laintiff and the [other r]esident." Fed. Def.'s Mem. at 7. Based on the current record of this case, plaintiff's negligence claim fails.

7

Plaintiff fares no better with respect to his Eighth Amendment claim. The FTCA's limited waiver of sovereign immunity does not extend to constitutional torts. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1984).

### III. CONCLUSION

Plaintiff's complaint fails to state a negligence or constitutional claim upon which relief can be granted, and the Court will grant defendants' motions. An Order is issued separately.

DATE: January 17, 2018        /s/
                                            EMMET G. SULLIVAN
                                            United States District Judge